# ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 SEP 29   PM 1: 00

DEPUTY CLERK _____

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| MVCONNECT, LLC, an Illinois Limited Liability Company and RECOVERY MANAGER PRO, LLC, a Delaware Limited Liability Company, | ) ) ) ) ) | 3-10CV-1948F |
|  | ) | Case No. |
| Plaintiffs, | ) ) | 43811 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| RECOVERY DATABASE NETWORK, INC., a Delaware corporation, and DIGITAL RECOGNITION NETWORK, INC., a Delaware corporation, | ) ) ) ) ) |  |
| Defendants. | ) |  |

## COMPLAINT FOR ANTITRUST VIOLATIONS AND CIVIL CONSPIRACY

Plaintiffs MVCONNECT, LLC ("MV") and Recovery Manager Pro, LLC ("RMP"), hereby file their Complaint for Antitrust Violations and Civil Conspiracy against defendants Recovery Database Network, Inc. ("RDN") and Digital Recognition Network, Inc. ("DRN"). Plaintiffs seek damages, injunctive and other relief for defendants' wrongful and anticompetitive acts.

### NATURE OF THE ACTION

1.     Since at least 2007, DRN and RDN have conspired to take numerous unlawful measures in an effort to harm their competitors, including plaintiffs, in the markets in which the parties do business, and ensure that RDN and DRN remain the dominant firms in their respective markets.  Defendants' wrongful and malicious conspiracy has impeded plaintiffs' ability to compete fairly in the relevant markets, has caused plaintiffs to lose millions of dollars in existing

and prospective business, has irreparably damaged plaintiffs' reputation and goodwill in those markets, and has had detrimental and anti-competitive effects on consumers in those markets.

## JURISDICTION AND VENUE

2.      Counts I, II and III are brought pursuant to Sections 1 and 2 of the Sherman Act (15 U. S. C. §§ 1, 2) and Section 4 of the Clayton Act (15 U. S. C. § 14), for violations of antitrust laws of the United States. The jurisdiction of this Court over these counts is founded on those sections and on 28 U.S.C. § 1331, which provides the Court with original jurisdiction over actions arising under the laws of the United States, and on 28 U. S. C. § 1337, which provides the Court with original jurisdiction over any action arising under federal laws regulating commerce or protecting commerce against restraints and monopolies. All parties to this lawsuit sell their products in interstate commerce as that term is defined in the relevant case law.

3.      Count IV of the Complaint is for common law civil conspiracy over which the Court has jurisdiction pursuant to 28 U. S. C. Section 1332 (28 U.S.C. § 1332) because there is complete diversity of citizenship between the plaintiffs on the one hand and defendants on the other hand, and the amount in controversy exceeds $75,000 exclusive of interest and costs. In addition, the Court has supplemental jurisdiction pursuant to 28 U. S. C. Section 1367 (28 U.S.C. § 1367), given that Counts I, II, and III assert related claims that arise under the laws of the United States and all claims alleged herein form part of the same case or controversy.

4.      This Court has personal jurisdiction over defendants RDN and DRN because both companies have their principal place of business in the state of Texas and transact substantial business there.

5.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 and 15 U. S. C. §§ 15 and 22 because the defendants reside and transact business in this district.

## THE AUTOMOTIVE RECOVERY INDUSTRY

6.     The automotive recovery industry in the United States is comprised of companies that provide goods and services to auto-finance companies and other lien-holders, leasing and rental companies, law enforcement agencies and other organizations (collectively, "Organizations"), that require assistance in locating and recovering automobiles pledged to them as collateral for defaulted loans or otherwise designated as "Vehicles of Interest." Organizations typically hire repossession agents ("Agents") to assist them with locating and/or recovering Vehicles of Interest. Both Organizations and Agents are consumers of goods and services sold or leased in the markets described below.

7.     Within the automotive recovery industry there are two markets relevant to the allegations in the Complaint:

8.     First, there is the market for the provision of on-line secured, encrypted, hosted "Recovery Databases" that Organizations and Agents use to store and manage data concerning Vehicles of Interest, to communicate with one another regarding on-going searches for those vehicles, and to manage day-to-day business matters pertinent to the recovery of those vehicles (the "Recovery Database Market"). Both Organizations and Agents are consumers in the Recovery Database Market, which is nationwide in scope.

9.     Second, there is the market for the provision of automated license plate recognition technology ("ALPR Technology Market"). ALPR technology is used in systems comprised of cameras mounted on vehicles which are linked to GPS-enabled computer software and one or more Recovery Databases (an "ALPR System"). The cameras are used to capture images of license plates in parking lots or on the open road. As those images are recorded, the ALPR System records and stores the GPS coordinates of each license plate, and searches through

3

the Recovery Database(s) to which it is linked to determine if the license plate is associated with a Vehicle of Interest ("ALPR Data"). Organizations and Agents can then use the ALPR Data in their efforts to locate and/or recover Vehicles of Interest. Both Organizations and Agents are consumers in the ALPR Technology Market, which is nationwide in scope.

<h3 style="text-align:center">THE PARTIES</h3>

**RECOVERY MANAGER PRO, LLC (PLAINTIFF)**

10.     RMP is a Delaware limited liability company with its principal place of business in Palatine, Illinois. RMP has two members: plaintiff MVCONNECT, LLC ("MV") and Florida Database Technologies, LLC. MV is the majority owner and managing-member of RMP, and its sole member, Scott Jackson, resides in and is a citizen of Illinois. Florida Database Technologies, LLC has two members, Patrick Wren and Kenneth Bradley, both of whom reside in and are citizens of Florida.

11.     RMP provides a Recovery Database to Organizations and Agents in the Recovery Database Market (the "RMP Database").

12.     The RMP Database becomes more attractive to Agent-consumers (and therefore the competitiveness of the RMP Database in the Recovery Database Market increases) as the number of Organizations that utilize the RMP Database increases.

**MVCONNECT, LLC (PLAINTIFF)**

13.     Plaintiff MV is an Illinois limited liability company with its principal place of business in Palatine, Illinois. MV is comprised of three divisions.

14.     Two divisions of MV, MVRecovery (also known as City Auto Recovery Service or "CARS") and MVIntel (also known as International Intelligence Agency, LLC or "IIA, LLC") seek to recover Vehicles of Interest in the greater Chicago area, in other states, and

internationally.   In addition, MVRecovery manages the recovery of Vehicles of Interest nationwide through a network of recovery agents who work for MV as independent contractors. MVRecovery and MVIntel are consumers in the Recovery Database Market.

15.     The third division of MV, MVTRAC, is an ALPR System provider in the ALPR Technology Market.

16.     MVTRAC's ALPR System works in the following manner: Via a secure, encrypted electronic data process, Organizations upload information concerning Vehicles of Interest to the RMP Database.  MVTRAC then distributes this information across its national system (the "Network") of mobile ALPR units ("MV Kits"), each of which is comprised of multiple cameras mounted to the outside of a vehicle and linked to a web-enabled laptop and printer installed inside the vehicle.  MV Kits are operated by Agents who have become MVTRAC subscribers ("Subscriber-Agents"), and pay a monthly fee to use the MV Kits, which MVTRAC installs on their vehicles.  When a Subscriber-Agent captures the license plate of a Vehicle of Interest that has previously been uploaded to RMP, the Subscriber-Agent is alerted via on-screen and e-mail notification and immediately receives a repossession order authorizing it to repossess the vehicle as an agent of MVRecovery.  Once the Subscriber-Agent successfully repossesses the Vehicle of Interest, the Organization pays a fee to MV and MV, in turn, pays a fee to the Subscriber-Agent.

17.     MVTRAC's ALPR System becomes more attractive to Agent-consumers (and therefore the competitiveness of MVTRAC in the ALPR Technology Market increases) as more Organizations upload their inventory of Vehicles of Interest into the RMP Database, because this increases the number of opportunities for Subscriber-Agents to repossess Vehicles of Interest through the use of their MV Kits.

5

18.     In addition to using ALPR Data for the immediate repossession of Vehicles of Interest, MVTRAC also stores ALPR Data for automobiles that are not presently Vehicles of Interest for subsequent use in locating and/or repossessing those vehicles in the event that they become Vehicles of Interest at a later date. ALPR Data for vehicles that later become Vehicles of Interest is a valuable recovery tool because it provides information about where those Vehicles of Interest are likely to reappear.

**RECOVERY DATABASE NETWORK, INC. (DEFENDANT)**

19.     Recovery Database Network, Inc. is a Delaware Corporation with its principal place of business at 4100 International Plaza, Suite 2-B10, Fort Worth, Texas, 76109.

20.     RDN also provides a Recovery Database to Organizations and Agents (the "RDN Database"). RDN is the dominant Recovery Database provider in the Recovery Database Market.

21.     Numerous Organizations, including many of the largest automobile lenders in the United States (e.g. Chase Financial Services, Capital One, Wachovia, Regional Acceptance Corporation, US Bank), use the RDN Database. Many of these lenders use the RDN Database as their sole and exclusive platform for storing and managing data regarding Vehicles of Interest and therefore assign repossession work only to Agents who are able to access the RDN Database.

22.     More than 2,100 Agents subscribe to RDN, including 98% of all members of the four largest recovery industry trade groups (American Recovery Association, National Finance Adjusters, Allied Finance Adjusters and Time Finance Adjusters). In contrast, 249 Agents currently subscribe to RMP.

23.     RDN reports on its website that, in 2008, it processed over 3,106,790 recovery related work orders from Agents with subscriptions to RDN.  According to RDN's website, these work orders resulted in over 1,333,473 repossessions.

24.     In contrast, in 2009, RMP processed approximately 200,888 recovery related work orders from Agents with subscriptions to RMP, which resulted in approximately 81,916 repossessions.

**DIGITAL RECOGNITION NETWORK, INC. (DEFENDANT)**

25.     Defendant Digital Recognition Network, Inc. is a Delaware Corporation with its principal place of business at 4100 International Plaza, Suite 2-B10, Fort Worth, Texas, 76109. DRN was at one time a division of RDN.  DRN is now a separate entity from RDN, but continues to share common officers and/or directors with RDN, and is frequently advertised in trade publications and at industry events as a "package deal" with RDN.

26.     Like MVTRAC, DRN provides an ALPR System within the ALPR Technology Market.

27.     Like MVTRAC, DRN collects ALPR Data through mobile ALPR units mounted on the automobiles of Agents who have agreed to become DRN Affiliates ("DRN Kits").  DRN then sells this ALPR Data to Organizations, which use it to assist in their efforts to repossess Vehicles of Interest.  When an Organization recovers a Vehicle of Interest in part through ALPR Data purchased from DRN, DRN in turn pays a finder's fee to the DRN Affiliate whose DRN Kit recorded that ALPR Data.

28.     DRN requires all DRN Affiliates to sign its Master Affiliate Agreement ("MAA"). The MAA prohibits each DRN Affiliate, during the term of the agreement and for 12 months thereafter, from being an "owner, user, supplier, employee, agent, or otherwise

associated with" any of DRN's competitors in the ALPR Technology Market (the "Exclusivity Provision"). The MAA also provides that any DRN Affiliate who breaches the Exclusivity Provision shall be liable to DRN for $250,000 in liquidated damages.

29.     DRN has threatened to terminate DRN Affiliates' access to DRN and RDN if they violate the MAA. This threat is particularly significant because many of the largest lending institutions for which DRN Affiliates work will assign repossessions only to agents who can access the RDN Database. Therefore, if DRN were to block an Agent from accessing the RDN Database, the Agent would immediately lose substantial business and, in many instances, could go out of business entirely.

30.     The Exclusivity Provision in the MAA and DRN's threats to terminate DRN Affiliates that breach that provision discourages Agents from becoming customers of MVTRAC, and unreasonably restrains competition in ALPR Technology Market.

## COUNT I

### CONSPIRACY TO VIOLATE SECTION 1 OF THE SHERMAN ACT BY DRN AND RDN

31.     The allegations of paragraphs 1-30 of the Complaint are hereby incorporated by this reference.

32.     Plaintiff MVTRAC and defendant DRN are both in the business of supplying ALPR Systems to Organizations and Agents in the ALPR Technology Market. DRN is the dominant or near-dominant provider of ALPR Systems in this market.

33.     Plaintiff RMP and defendant RDN are both in the business of supplying Recovery Databases to Organizations and Agents in the Recovery Database Market. RDN is the dominant or near-dominant provider of Recovery Databases in this market.

8

34. MVTRAC has spent considerable time, money and effort developing its proprietary ALPR System. That system is comparable or superior in quality to DRN's ALPR System. MVTRAC seeks to compete with DRN in the ALPR Market. In order to do so effectively, MVTRAC requires a fair opportunity to compete for potential customers—the Organizations and Agents who utilize or are interested in utilizing an ALPR System in their efforts to locate and recover Vehicles of Interest.

35. RMP has spent considerable time, money and effort developing a recovery database that is comparable or superior in quality to RDN's recovery database. RMP seeks to compete with RDN in the Recovery Database Market. In order to do so effectively, RMP requires a fair opportunity to compete for potential customers—the Organizations and Agents who utilize or are interested in utilizing a Recovery Database in their efforts to locate and recover Vehicles of Interest.

36. In or about 2008, DRN and RDN entered into an unlawful agreement for the purpose of restraining trade in the ALPR Technology Market and Recovery Database Market and maintain their respective dominance in those markets. In furtherance of this agreement, defendants disparaged the products and services of plaintiffs, damaged plaintiffs' goodwill and excellent reputation, caused plaintiffs irreparable injury and damage, interfered with plaintiffs' contractual relationships, and diverted plaintiffs' established and prospective customers to DRN and RDN.

37. In particular, defendants by themselves and through their officers, agents, salespeople, distributors and representatives, and other persons unknown to plaintiffs at this time, in pursuit of their unlawful agreement, have done the following:

a. From at least 2003 until November 22, 2009, RDN permitted MVRecovery and MVIntel to utilize the RDN Database for the management of their recovery assignments and to communicate with the Organizations with which they do business.  On November 23, 2009, just as MVTRAC was entering the ALPR Technology Market, RDN terminated MV's access to RDN.   This caused MVRecovery and MVIntel to lose substantial existing and future business from many large Organizations (e.g., Chase Financial Services, BMW Financial, Capital One, Credit Acceptance, Westlake Financial) which require all Agents with whom they work to use the RDN Database.  Further, because the denial of access to RDN effectively meant that MVTRAC could no longer accept repossession orders from these Organizations, MVTRAC's inventory of recoverable Vehicles of Interest dropped significantly.   As a consequence, MVTRAC has lost significant revenue and its ALPR System is less competitive than it otherwise would be, to the detriment of MV and all consumers in the ALPR Technology Market;

b. In addition to prohibiting MV from accessing RDN going forward, RDN also refused to return to MV all of the data that MV had stored on the RDN Database. MV invested substantial resources to acquire this data over a multi-year period and, as such, MV owns this data. As a result of RDN's refusal to return this data to MV, MV was unable to complete many of its pre-existing recovery assignments and lost substantial revenue that it otherwise would have earned;

c. RDN's termination of MV's access to the RDN Database also caused MV to bear the increased costs required to interface its system with an alternative database, the RMP Database, on an accelerated basis;

d. DRN has caused all DRN Affiliates to execute the MAA, which (i) prohibits them from using the services of or even associating with DRN Competitors, through the Exclusivity Provision; and (ii) contains prohibitively high liquidated damages provisions that DRN uses to intimidate DRN Affiliates and prevent them from even considering the services of DRN's competitors, including MVTRAC. As a consequence, MVTRAC is effectively denied access to hundreds of Agents who would use MVTRAC's ALPR System but for the oppressive terms of the MAA. Further, RDN's and DRN's actions have prevented MVTRAC from acquiring a sufficient number of Subscribers to compel large Organizations to do business with MVTRAC;

e. In order for a company to compete successfully in the ALPR Technology Market, it must be able to promote its products to members of the American Recovery Association ("ARA"), which advertises itself as "the world's largest organization of professional finance adjusters and repossession specialists." Prior to April 2009, certain members of the ARA Executive Board caused ARA to invest substantial funds in DRN, and to enter into an exclusive joint marketing agreement with DRN whereby ARA members are offered certain promotional discounts and benefits for becoming DRN Affiliates. As a result, ARA has heavily promoted DRN to the exclusion of other providers of ALPR Systems, including MVTRAC;

11

f.  As a result of DRN's joint marketing agreement with ARA, and the substantial influence that DRN and RDN exert over ARA and, in particular, certain members of the ARA Executive Board, ARA refused to permit MVTRAC to participate as a vendor at the ARA 2010 North American Repossessors Summit in Dallas, Texas (the "Summit") which is the largest and most influential trade show of its kind in the United States, which many of MV's customers and potential customers attended, and at which DRN was prominently showcased.  Because MVTRAC was prohibited from participating directly in the Summit, it was forced to hold a separate promotional event in close proximity to the Summit, which cost MV nearly ten times the amount it would have spent to participate as a vendor at the Summit.

g.  DRN has threatened to terminate certain DRN Affiliates' use of DRN and/or RDN unless they cause their affiliate companies, who have not contracted with DRN, to cancel their subscriptions with MVTRAC.  As a result, DRN Affiliates who wish to switch to MVTRAC or utilize both DRN and MVTRAC, are discouraged from doing so;

h.  DRN has threatened to terminate DRN Affiliates' access to DRN and RDN, and to enforce the Exclusivity Provision and liquidated damages provision of the MAA, if these DRN Affiliates were to use an ALPR System other than DRN, with knowledge that such action would have the likely effect of putting these DRN Affiliates out of business.  As a result, DRN Affiliates who wish to switch to MVTRAC or utilize both DRN and MVTRAC, are discouraged from doing so;

    i.   RDN has retaliated against RDN subscribers who also use competitors' recovery databases, by increasing the fees these subscribers must pay to continue accessing the RDN Database and thereby unfairly discouraging other RDN subscribers from doing business with RDN's competitors, including RMP. As a result, RDN Subscribers who wish to switch to RMP or utilize both RDN and RMP, are discouraged from doing so;

    j.   DRN has retaliated against former DRN Affiliates who returned their DRN Kits to DRN and switched to MVTRAC, by breaching promises to refund amounts due these DRN Affiliates under their contracts for the DRN Kits. As a result, DRN Affiliates who wish to switch from DRN to MVTRAC are further discouraged from doing so;

    k.   All conduct described above was taken pursuant to a conspiracy, plan and scheme between DRN and RDN that was intended to damage MV and harm competition in the relevant markets.

38.    DRN's and RDN's conspiracy, plan and scheme as described above have had the direct and proximate result of: (i) substantially raising plaintiffs' costs to promote and provide their respective goods and services to their customers; and (ii) preventing plaintiffs from doing business with Organizations and Agents who would become customers of plaintiffs but for RDN's and DRN's actions.

39.    As a further direct and proximate result thereof, competition in the ALPR Technology Market and in the Recovery Database Market has been significantly harmed, enabling RDN and DRN to maintain their monopolies in those markets, and injuring plaintiffs and consumers in those markets.

40. This wrongful conspiracy, plan and scheme, and the acts taken in pursuit thereof, constitute an unreasonable restraint of trade, in violation of Section 1 of the Sherman Act (15 U. S. C. § 1).

WHEREFORE, plaintiffs pray that the Court grant them the following relief:

a) That it enter a preliminary injunction enjoining defendants from repetition of acts similar to the wrongful acts described above.

b) That upon a full hearing of this cause, it enter a permanent injunction forever prohibiting defendants and each of them from repetition of acts similar to the wrongful acts described above.

c) That MV and RMP, respectively, recover threefold the damages they have sustained by reason of the violations of the antitrust laws pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

d) That MV and RMP, respectively, recover the costs of this suit, including reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

e) That MV and RMP have such other relief as the Court deems equitable and proper.

## COUNT II

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT BY DRN

### (MONOPOLIZATION AND ATTEMPT AT MONOPOLIZATION)

41. The allegations of paragraphs 1-40 of the Complaint are hereby incorporated by this reference.

42. DRN is the dominant provider of ALPR Systems in the ALPR Technology Market. MVTRAC is a rival of DRN in the ALPR Technology Market.

43.    By and through wrongful acts attributed to DRN as described in paragraph 37 above, DRN has monopolized or has attempted to monopolize the ALPR Technology Market.

44.    As a result of DRN's monopolization or attempted monopolization of the ALPR Technology Market, MVTRAC has been prevented from competing effectively in the ALPR Market, to the detriment of MV and to the consumers in that market—all Organizations and Agents who wish to utilize one or more ALPR Systems in their effort to locate and recover Vehicles of Interest.

45.    DRN's actions as described above constitute monopolization or attempted monopolization in the ALPR Technology Market, in violation of Section 2 of the Sherman Act (15 U. S. C. § 2).

WHEREFORE, plaintiff MVCONNECT, LLC prays that the Court grant it the following relief:

a) That it enter a preliminary injunction enjoining DRN from repetition of acts similar to the wrongful acts described above.

b) That upon a full hearing of this cause, it enter a permanent injunction forever prohibiting DRN from repetition of acts similar to the wrongful acts described above.

c) That MV recover threefold the damages it has sustained by reason of the violations of the antitrust laws pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

d) That MV recover the costs of this suit, including reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

e) That MV have such other relief as the Court deems equitable and proper.

## COUNT III

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT BY RDN AND DRN

### (CONSPIRACY TO MONOPOLIZE)

46.    The allegations of paragraphs 1-45 of the Complaint are hereby incorporated by this reference.

47.    RDN is the dominant provider of recovery databases in the Recovery Database Market.  RMP is a rival of RDN in the Recovery Database Market.

48.    DRN is the dominant provider of an ALPR System in the ALPR Technology Market.  MVTRAC is a rival of DRN in the ALPR Technology Market.

49.    By and through their collective actions as described in paragraph 37 above, RDN and DRN have conspired to monopolize the ALPR Technology Market and Recovery Database Market.

50.    As a result of DRN's and RDN's conspiracy, plan and scheme as described above, plaintiffs have been prevented from competing effectively in their respective markets, to the detriment of plaintiffs and of consumers in those markets—all Organizations and Agents who wish to utilize one or more recovery databases and/or one or more ALPR Systems in their effort to locate and recover Vehicles of Interest.

51.    RDN's and DRN's actions as described above constitute a conspiracy to monopolize in violation of Section 2 of the Sherman Act (15 U. S. C. § 2).

WHEREFORE, plaintiffs pray that the Court grant them the following relief:

a)  That it enter a preliminary injunction enjoining RDN and DRN from repetition of acts similar to the wrongful acts described above.

16

b) That upon a full hearing of this cause, it enter a permanent injunction forever prohibiting RDN and DRN from repetition of acts similar to the wrongful acts described above.

c) That plaintiffs recover threefold the damages they have sustained by reason of the violations of the antitrust laws pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

d) That plaintiffs recover the costs of this suit, including reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act (15 U. S. C. § 15).

e) That plaintiffs have such other relief as the Court deems equitable and proper.

## COUNT IV

### CIVIL CONSPIRACY AGAINST RDN AND DRN

52. The allegations of paragraphs 1-51 of the Complaint are hereby incorporated by this reference.

53. Plaintiffs have spent considerable time, money and effort developing good will with the various Organizations and Agents with whom they conduct business and endeavor to conduct business. As a result of these efforts, plaintiffs have developed excellent reputations and good will among the various Organizations and Agents throughout the United States that are their established customers and prospective customers.

54. Defendants RDN and DRN are closely affiliated entities. DRN and RDN are advertised as a package-deal with respect to the provision of automotive recovery products and services, have overlapping officers and/or directors, and share office space.

17

55.     Since at least 2007, defendants DRN and RDN have been engaged in a conspiracy, plan and scheme to destroy plaintiffs and force them out of the automotive recovery industry, as described in Counts I, II and III above.

56.     In addition to defendants' actions being unlawful under the federal antitrust laws, these actions also were taken for the express purpose and had the effect of tortiously interfering with plaintiffs' pre-existing and prospective business relationships.

57.     DRN's and RDN's unlawful and malicious conduct as described in paragraph 37 above has proximately resulted in plaintiffs' loss of numerous lucrative contractual relationships with Organizations and Agents, which, but for defendants' willful and malicious interference, would still exist today.

58.     Further, defendants' unlawful and malicious conduct as described in paragraph 37 above has prevented plaintiffs from forming numerous new business relationships with Organizations and Agents.   Plaintiffs were reasonably certain to form these business relationships but for defendants' unlawful interference.  DRN and RDN engaged in the unlawful conduct described above with the conscious desire to prevent MV and RMP from forming these additional business relationships.

59.     The collective wrongful acts undertaken by DRN and RDN as described herein have irreparably harmed plaintiffs in that they have had the effect of diminishing plaintiffs' reputations and goodwill in the automotive recovery industry, have thwarted plaintiffs' ability to grow their respective businesses, and have caused plaintiffs to lose numerous pre-existing and prospective customers, and millions of dollars in revenue.  Plaintiffs will suffer further damage and irreparable injury unless and until DRN and RDN are enjoined by this Court from continuing with their tortious conduct.

18

60.     By reason of the wrongful and malicious conduct of defendants, plaintiffs are entitled to recover actual and exemplary damages from defendants.

WHEREFORE, plaintiffs pray that the Court grant them the following relief:

a) That it enter a preliminary injunction enjoining defendants from repetition of acts similar to the wrongful acts described above.

b) That upon a full hearing of this cause, it enter a permanent injunction forever prohibiting defendants from repetition of acts similar to the wrongful acts described above.

c) That, upon a full hearing of this cause, the Court enter a money judgment against defendants for that amount of ordinary damages which the evidence shows that MV and RMP, respectively, have suffered as a result of the wrongful acts alleged herein and for exemplary damages in excess of $10 million.

d) That plaintiffs have such other relief as the Court deems equitable and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**MVCONNECT, LLC and
RECOVERY MANAGER PRO, LLC**

By: /s/ Gina Viccinelli
         One of Their Attorneys

*Local Counsel:*

Gina Viccinelli
State Bar No. 24013685
Kenneth Riney
State Bar No. 24046721
**HERMES SARGENT BATES, LLP**
901 Main Street, Suite 5200
Dallas, Texas 75202
214-749-6544 (phone)
214-749-6344 (fax)
Gina.Viccinelli@hsblaw.com

*Lead Counsel (Pro Hac Vice Motions forthcoming):*

Robert A. Chapman (ARDC No. 6191210)
Peter M. Spingola (ARDC No. 6243942)
Sara Siegall (ARDC No. 6297622)
**CHAPMAN SPINGOLA, LLP**
77 West Wacker Drive, Suite 4800
Chicago, Illinois 60601
312/606-8754 (phone)
312/630-9233 (fax)
ssiegall@chapmanspingola.com

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

IVCONNECT, LLC and RECOVERY MANAGER PRO, LLC

## DEFENDANTS

DIGITAL RECOGNITION NETWORK, INC. and RECOVERY DATABASE NETWORK, INC.

**(b)** County of Residence of First Listed Plaintiff   COOK COUNTY, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   TARRANT COUNTY, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Gina Viccinelli, HERMES SARGENT BATES, LLP, 901 Main Street, Suite 5200, Dallas, Texas 75202

Attorneys (If Known)

RECEIVED
SEP 29 2010
CLERK, US DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

3-10CV-1948F

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS

- ☐ 510 Motions to Vacate Sentence

**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY

- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 400 State Reapportionment
- ☒ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U. S. C. §§ 1, 2, 14

Brief description of cause:
Violations of the Sherman Act and Common Law Civil Conspiracy

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ monetary and injunctive

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED: (See instructions)

JUDGE _____ DOCKET NUMBER _____

DATE September 29, 2010

SIGNATURE OF ATTORNEY OF RECORD   *Gina Viccinelli*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____